**IN THE COURT OF APPEALS OF IOWA**

No. 14-0933
Filed August 13, 2014

**IN THE INTEREST OF B.M.,**
**Minor Child,**

**C.M., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Thomas W. Mott, District Associate Judge.

A mother appeals from the termination of her parental rights. **AFFIRMED.**

Magdalena Reese of Cooper, Goedicke, Reimer & Reese, P.C., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie Brown, Assistant County Attorney, for appellee State.

Kimberly Ayotte of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

A mother appeals[1] from the juvenile court's order terminating her parental rights to her child, B.M., contending reasonable efforts to reunify the mother and child were not made, there was not clear and convincing evidence to support termination under Iowa Code section 232.116(1)(k) (2013), and termination was not in the best interest of the child. Despite years of intensive services offered to improve her ability to parent, and despite the mother's efforts, she remains unable to provide safety and adequate care for the child. We affirm the termination of the mother's parental rights because reasonable efforts at reunification have been made, there is clear and convincing evidence to support termination pursuant to section 232.116(1)(g),[2] termination will allow the child safety and permanency, and no statutory factor weighing against termination exists.

### I. Background Facts and Proceedings.

The mother comes to the attention of the juvenile court with the following background. She had prior involvement with Visiting Nurse Services (VNS) and

---

[1] The juvenile court also terminated the parental rights of the legal father and the putative father, neither of whom appeals.
[2] Iowa Code section 232.116(1)(g) allows the juvenile court to termination parental rights where all the following are found:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

the Iowa Department of Human Services (DHS), and has had her parental rights to other children terminated because she was unable to gain the skills necessary to care for her children safely. In 2008, the mother had her rights to a child terminated. *See In re C.W.M.-I.*, No. 08-1022, 2008 WL 2906631 (Iowa Ct. App. July 30, 2008). The mother had another child, G.M., born in December 2011, who was adjudicated a child in need of assistance (CINA). An order terminating the mother's parental rights to G.M. was filed on April 4, 2012, eight months before the birth of B.M., and provides in part:

> [The mother] had made some progress with services. She had her own apartment and was taking parenting and domestic abuse classes. She was working on budgeting. She was meeting with a psychiatrist and she was employed. The court declined to waive reasonable efforts. . . .
>
> There is no evidence to support the conclusion that [the mother] has gained insight into the types of abusive relationships in which she continued to involve herself. She has been in at least four domestically-violent relationships. . . .
>
> While [the mother] tries very hard to meet [G.M.'s] needs, she has not been able to understand his developmental stages and delays and needs constant supervision when they are together. At the time of the disposition hearing, [the mother] believed [G.M.] was violent because he was head-butting her, scratching her, and pinching her cheek. Although she had been working with extensive services, she continued to need reminders regarding basic care, including holding her baby's head. While she had certainly put forth the effort to reunify with [G.M.], she lacked the ability to care for him safely or provide him with stability.
>
> . . . . Despite the offer and/or receipt of services specifically designed to remediate the protective problems that first brought [G.M.] to the attention of juvenile court, he cannot be returned to the custody of a parent today without further adjudicatory harm.
>
> Despite family contact three times a week with a skilled [Family Safety, Risk, and Permanency] FSRP worker providing one-on-one supervision and training, [the mother] continues to lack basic parenting skills. She does not support [G.M.'s] head or change his diaper appropriately. Although [the mother] is eager to take suggestions from the FSRP worker and the Early Access worker, and does well comforting [the child] when he is upset, [she] frequently places [G.M.] at risk even under this close supervision.

For example, there have been times where she has left him on a changing table and stepped away. She may make progress during one visit with a skill such as supporting [the child's] head properly, but at the next visit it is back to square one. There is no consistent growth in her skills.

. . . .

[The mother] has made little progress in mental health therapy. She does not believe she needs this help because they only want to talk about her relationships with men, or her past abuse, or prior termination of parental rights, or her relationship with her family of origin. She wants to focus on the present and future, failing to recognize the role unresolved trauma plays in her ability to take care of herself. . . . She remains on medications for posttraumatic stress disorder and fetal alcohol syndrome. Because she believes she worked on those issues as a child, she does not need to deal with them again. However, she has known throughout the course of this case that therapy was necessary to support reunification. Yet, [the mother] has not engaged in therapy since January 2012.

. . . .

Although only four months have passed since this case was filed, four months is the entirety of [G.M.'s] life. Given the prior termination of parental rights with respect to another child who was a member of the same family, this court has no confidence that [the mother] will be able to make the necessary changes in the foreseeable future necessary to support reunification.

Although she has the willingness to respond to services that would correct the situation that led to prior termination of parental rights, she lacks the ability. An additional period of rehabilitation would not correct the situation regardless of the intensity of services provided.

If love were the only measure of the parent's ability to care for a child, [G.M.] would have the benefit of flawless parenting. However, such is not the case. While love is a critical ingredient, it takes much more than love to meet an infant's needs for safety, permanency, and well-being.

B.M. was born to the mother in December 2013. During her pregnancy with B.M., the mother attended prenatal and parenting classes. The child was removed from her care from the hospital, however, due to the mother threatening to leave the hospital against medical advice; the mother's low mental functioning and unresolved mental health issues, which include anger outbursts, bipolar

disorder, and schizophrenia; her living with a person required to register as a sex offender; and her "demonstrated limited parenting skills." The child was placed in foster care with the family that had adopted his two half-siblings.

On February 11, 2014, B.M. was adjudicated a CINA. The juvenile court made these specific findings:

> [The mother's] parental rights have been recently terminated with respect to two other children who are members of the same family. The protective problems that resulted in those outcomes persist. The mother has recently re-engaged in therapy, but lacks basic parenting skills to meet the needs of an infant, particularly one with special medical needs. She also lacks appropriate housing. [B.M.] is in a home with siblings. He has ongoing significant health problems (seizure disorder) that the foster parents are able to meet.

The court noted reasonable efforts had been made to eliminate the need for removal, including prior CINA services, and on-going family contact, FSRP, and VNS. The court also stated no additional services were requested.

In March, the mother requested she be assigned a different DHS worker because Ashley McLaughlin had been her FSRP worker in "another matter." A hearing was held on April 2 and the motion was denied. The court found,

> Ms. McLaughlin has provided competent services. Nothing in the evidence justifies changing DHS workers at this juncture. Ms. McLaughlin served as the mother's FSRP worker in a prior case, and, therefore, has an advantage in working with [the mother], as she is familiar with her background and needs. The mother's rights have previously been terminated with respect to children who are members of the same family. A Petition to Terminate Parental Rights has been filed regarding [B.M.]. It is in the child's best interest not to disrupt the relationships and stream of services and oversight.
> Reasonable efforts with respect to the specific social worker are being provided. The Court defers its reasonable efforts finding with respect to services overall until the next hearing.

On May 2, the State informed the juvenile court that the mother's visits with the child were suspended in March due to the mother's "aggressive and threatening behaviors." Visits were not set to resume until the mother's therapist says she is no longer a safety threat to the child or the providers.

A dispositional/termination hearing was held on May 21, 2014. The court terminated the mother's parental rights pursuant to Iowa Code sections 232.116(1)(d) (child adjudicated CINA, parent received corrective services, circumstances continue despite services), (g) (see footnote 2), and (k) (child adjudicated CINA, parent suffers from and has been repeatedly institutionalized for chronic mental illness and presents danger to herself or others as evidenced by prior acts, and prognosis indicates child cannot be returned in a reasonable length of time).

The mother appeals, contending reasonable efforts were not made, termination under 232.116(1)(k) was improper, termination is not in the child's best interest due to the bond between the mother and child.

**II. Scope and Standards of Review.**

We review proceedings to terminate parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

**III. Discussion.**

The juvenile court made the following findings, which we find in our de novo review are supported by the evidence and reflect the provision of reasonable efforts at reunification:

> [The mother] . . . has gone through many motions trying to build a record of parenting. The evidence shows, however, depressing recurrence of the facts recited by the Iowa Court of Appeals in the termination of parental rights of an older child. [*In re C.W.M.-I.*] Educated, skilled, dedicated, and able, three women working to assist [the mother] in her parenting found her frequently showing mood swings consistent with her diagnosis of a mood disorder. They found her angry and unable to control anger despite multiple sessions to help her with anger management. . . .
>
> . . . .
>
> [The mother] corroborated the testimony of the service providers that she does not follow the budget that her social worker helped her make. She corroborated testimony that she cannot control her anger. She acknowledges that she cannot think when she gets angry, but testifies that she merely needs to learn to think when she gets angry to deal with that concern. Other witnesses testified to her behavior when angry that includes yelling, screaming, threatening, and cursing those trying to help her. This behavior causes stress and harm to the child, as she was informed repeatedly. Her continuing to engage in such behavior while holding B.M.M. led to suspension of her visits with the child in March 2014. Visits have not resumed because she has not addressed and dealt with those harmful behaviors.
>
> [The mother] also corroborated the understanding of social worker, therapist, and FSRP worker that she engages in a series of brief sexual relationships, cohabiting with abusive males, many subject to sex offender registration. Many of them engage in physical violence. Without exception, her choices of male companions would raise suspicion that anywhere she resided would constitute a dangerous place for a child.
>
> Regardless of [her] inabilities to have a residence, to support herself, to support another person, to control her anger, and to do other than associate intimately with assaultive persons and those subject to sex offender registration, the testimony establishes her inability to simply care for a child's basic needs. She cannot consistently demonstrate supporting the child's head, feeding the child, or changing the diaper when needed.
>
> Beyond [the mother's] inability to perform the basic acts of holding, feeding, and diapering the child, she could not meet the

> child's special needs. She failed to understand the explanation of the child's physician on how to deal with a seizure. After the physician explained it to her, she asked the social worker to explain it to her.
>
> Coping with her own life overwhelms [the mother]. She can no more care for a child now than she could when the court terminated rights regarding an older child.

We agree with the finding that "[t]he passage of more time, however, will not change [the mother's] inability to parent."

The mother contends reasonable efforts to reunify her with her child were not made because visits were suspended. The concept of reasonable efforts "covers both the efforts to prevent and eliminate the need for removal." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). While the focus is on services to improve parenting, it also "includes visitation designed to facilitate reunification *while providing adequate protection for the child*." *Id.* (emphasis added). The record establishes extensive and individualized services have been offered to the mother in this and prior juvenile proceedings. The mother's inability to control her anger continues. The juvenile court found the mother was offered individualized services but the mother remained unable to care for her child, and no additional time and services would change her inability to parent. Upon our de novo review, we determine reasonable efforts were made.

The mother argues termination is not proper under section 232.116(1)(k). She does not, however, challenge termination under the other two grounds found by the juvenile court. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa

2012). There is clear and convincing evidence to support termination under Iowa Code section 232.116(1)(g) and we affirm on that ground.

Finally, the mother argues termination was not in the child's best interests due to the close bond between the mother and child. We presume she is invoking Iowa Code section 232.116(3)(c) (providing the court need not terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). Even if this claim is adequately preserved—and the State contends it is not—this record does not support such a finding.

We affirm the termination of the mother's parental rights to B.M.

**AFFIRMED.**